In the Matter of Nathan Apsel et al., Appellants, *v.* H. Eliot Kaplan et al., Constituting the New York State Department of Civil Service, et al., Respondents.

Third Department, January 25, 1961.

*Samuel Resnicoff* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Milton Kaplan* and *Paxton Blair* of counsel), for respondents.

*Per Curiam.* All of petitioners except Mahoney passed a competitive civil service examination in 1949 for the position of pari-mutuel examiner in the classified service; and Mahoney passed an examination for this position in 1954. All were first appointed to the position in various years from 1950 to 1954; the appointments of all but Mahoney being based on the 1949 list. It has been shown that there are two groups of pari-mutuel examiners, one falling in a class which by civil service rules in effect in 1949 when that examination was taken was termed "season [*sic*] positions" (Rules for Classified Civil Service, rule XIII; see N. Y. Off. Comp. of Codes, Rules & Regulations,

p. 361) and the other referred to on this appeal as "full-time positions".

It is not disputed that the same list was used in 1949 and subsequently for the appointment alike of both seasonal and full-time pari-mutuel examiners; and hence it appears conclusively in this record that both classes of positions, differing merely in length of appointment, were positions within the language of former section 31 of the Civil Service Law (now § 80, subds. 1, 2 and § 81, subds. 1, 3, 5), which had "the same or similar requirements for entrance".

The appointments of petitioners when made from the lists were all to seasonal positions. Successive appointments were made annually, at first under rules requiring annual application after the termination of the racing season; and later automatically from special seasonal lists. These appointments were for substantial parts of each year (e.g., 1958, 209 working days) and the seasonal workers were on duty about the same number of days a year as the full-time workers in the same class.

The petitioners worked in the 1958 racing season and when it closed in the Fall their services were terminated and their names were placed on a preferred list for appointment as seasonal examiners in accordance with classifications and regulations made by the Civil Service Commission.

Instead of making seasonal appointments in the Spring of 1959 the State decided to make full-time appointments and made them from a new eligible list which had been established in 1958. This was consistent with the appropriate civil service regulation (rule XIII-A; see N. Y. Off. Comp. of Codes, Rules & Regulations [8th Cum. Supp.], pp. 89–90) adopted in 1952 which provided for "seasonal positions" and which set up a "seasonal employment list" from which successive appointments of the kind of positions petitioners held should be made. This rule expressly stated that such a list "shall not be deemed" to be "a preferred list as provided for in section 31 of the Civil Service Law".

The rules of the commission as to lists in different categories must, however, yield to the clear mandate of the statute (Civil Service Law, § 31) that any person who, "while holding a position in the competitive class" has "been separated from the service" shall have his name placed on "a preferred list" for the position "last held" or "any other position having the same or similar requirements for entrance." The court at Special Term was of opinion that petitioners were not eligible for the appointment to full-time positions when the State decided not to continue the seasonal positions in the Spring of

1959 and to have the work done on a full-time basis, because petitioners were not " holding " positions in the classified service when the full-time positions were filled. The crucial time was not the Spring of 1959; it was the Fall of 1958, when petitioners' services were " terminated " that is controlling.

Petitioners were then in the classified service; and if no further seasonal appointments were to be made for the positions they held, but instead full-time positions were to be utilized having exactly the same " requirements for entrance ", the statute in express terms directed that petitioners be placed on a preferred list for appointment. This seems to us to be the inescapable effect of the language of section 31.

Although there seems to be no dispute on the facts, the order appealed from dismisses the petition and respondents have interposed an answer which, on its face, tenders factual issues the existence of which would preclude entry of a final order annulling the determinations. If it is stipulated there are no factual issues, the order to be settled should reverse the order dismissing the petition and grant the relief requested in the petition; otherwise, it should reverse the order and deny the motion to dismiss, with $10 costs.

BERGAN, P. J., COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

If it is stipulated there are no factual issues, the order to be settled will reverse the order dismissing the petition and grant the relief requested in the petition; otherwise, it will reverse the order and deny the motion to dismiss, with $10 costs. Settle order on notice.